567 S.E.2d 907

**WORSLEY COMPANIES, INC., Appellant,**

**v.**

**SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL, Respondent.**

No. 3537.

Court of Appeals of South Carolina.

Heard May 8, 2002.

Decided July 29, 2002.

98

J. Charles Ormond, Jr., of Holler, Dennis, Corbett, Ormond & Garner, of Columbia, for appellant.

Deputy General Counsel Jacquelyn S. Dickman, of South Carolina Department of Health and Environmental Control, of Columbia, for respondent.

HUFF, Judge:

Worsley Companies, Inc. filed this action against the South Carolina Department of Health and Environmental Control (DHEC) seeking a determination that it was entitled to reimbursement pursuant to the State Underground Petroleum Environmental Response Bank (Superb) Act, S.C.Code Ann. § 44–2–10 *et seq.* (2002), for a payment it made in settlement of a claim arising out of the release of petroleum product from an underground storage tank it owned. The circuit court found Worsley was not entitled to reimbursement and that DHEC had acted properly in denying the claim. Worsley appeals. We affirm.

### FACTS/PROCEDURAL HISTORY

Worsley operates a convenience store and gas station on a site it leases from Byrd Property Ventures (BPV) in Florence County. The lease was originally entered into in 1983 be-

tween Southern Bank and Trust Company, as trustee under the will of R.P. Byrd, a predecessor in interest to BPV, and New Seaboard Petroleum, Ltd., a predecessor in interest to Worsley. The site is designated as tract # 60 on the Florence County Tax Map. The record establishes that Worsley leased tract # 60 from BPV at all relevant times connected with this case, including the time of contamination.

In 1991, Worsley became aware of a release of petroleum product from the underground tanks on tract # 60 into the soil and groundwater. It notified DHEC. Pursuant to DHEC requirements, Worsley conducted an assessment and initiated remediation of the plume contaminants that had escaped from the storage tanks. DHEC authorized approximately $360,000.00 to reimburse Worsley for assessment and remediation of the petroleum contamination. It is estimated that the total expenditures by DHEC in connection with the clean-up will be approximately $460,000.00.

The release from tract # 60 extended to tract # 79 which is also owned by BPV. In 1996, BPV sued Worsley alleging damage to its property. The parties reached a settlement, approved by the court, for $400,000.00. The settlement resolved claims relating to both tracts # 60 and # 79.

Worsley requested indemnification for the settlement from the Superb Financial Responsibility Fund. DHEC denied the request. Worsley then filed this declaratory judgment action seeking a determination that it was entitled to reimbursement. The circuit court found that DHEC acted properly and that Worsley was not entitled to reimbursement. This appeal followed.

### *LAW/ANALYSIS*

I. Third Party Claim

Worsley argues the circuit court erred in holding BPV was not a third party as defined by the Superb Act. We disagree.

The Superb Act creates two funds to be administered by DHEC. The statute describes the funds as follows:

The 'Superb Account' and the 'Superb Financial Responsibility Fund' are created to assist owners and operators of underground storage tanks containing petroleum and petro-

leum products.... The Superb Account must be used for payment of usual, customary, and reasonable costs for site rehabilitation of releases from underground storage tanks containing petroleum or petroleum products. The Superb Financial Responsibility Fund must be used for compensating third parties for actual costs for bodily injury and property damage caused by accidental releases from underground storage tanks containing petroleum or petroleum products.

S.C.Code Ann. § 44–2–40(A) (2002).

The Superb Act defines a third party claim as follows:

'Third party claim' means a civil action brought or asserted by an injured party against an owner or operator of an underground storage tank for bodily injury or property damages resulting from a release of petroleum or petroleum products from an underground storage tank. The underground storage tank owner or operator, *the owner of the property where the underground storage tank is located,* a person to whom properties are transferred in anticipation of damage due to a release, employees or agents of an owner or operator, or employees or agents of the property owner *must not be considered a third party.*

S.C.Code Ann. § 44–2–20(23) (2002) (emphasis added).

DHEC, which is responsible for the administration of the Superb Financial Responsibility Fund, from which Worsley seeks reimbursement determined BPV could not be considered a third party under the Superb Act because it was the owner of the property where the underground storage tank was located.

 "The construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons." *Dunton v. South Carolina Bd. of Examiners in Optometry,* 291 S.C. 221, 223, 353 S.E.2d 132, 133 (1987). In construing a statute, its words must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation. *First Baptist Church of Mauldin v. City of Mauldin,* 308 S.C. 226, 417 S.E.2d 592 (1992).

The circuit court held "[u]nder the clear and unambiguous limitations of the statute a third party claim by BPV cannot be paid from the state fund." We agree.

■ On appeal, Worsley argues BPV had only a beneficial interest in tract # 60 and therefore had no control over the use of the property at the time of the release. At trial, however, the parties did not dispute that BPV was the owner of tracts # 60 and # 79 at all relevant times, including the time when the contamination occurred in 1991. From the record before us, we do not see where Worsley made this argument to the trial court. Accordingly, the argument is not properly before this court. *See Wilder Corp. v. Wilke,* 330 S.C. 71, 497 S.E.2d 731 (1998) (holding issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review).

■ Worsley argues the language limiting third party claims was intended to preclude fraudulent recovery by tank owners and operators at the site where the release occurred. Even if section 44–2–20(23) was intended to preclude fraudulent recovery, there is no indication that this was the only purpose of the statute and only fraudulent claims should be denied.

Further, Worsley also argues the statutory language is ambiguous, but we find no ambiguity. We believe the phrase "owner of the property where the underground storage tank is located" includes exactly what it says it includes. We cannot add language to section 44–2–20(23) to limit to the definition of "third party" to only apply to claims for reimbursement for the property damage to the property where the underground storage tank is located. As BPV is the owner of tract # 60, the tract where the underground storage tank is located, it unambiguously falls under the statute and cannot be considered a third party. Thus, the circuit court did not err in finding BPV was not a third party under section 44–2–20(23).

## II. Equal Protection

Worsley argues DHEC's interpretation of section 44–2–20(23) violates the Equal Protection Clause. We disagree.

■ Worsley asserts that all legitimate, arms length claims of underground storage tank owners should be covered under the statute. It claims that DHEC's interpretation discriminates against "third party claimants who had only a beneficial interest in the property where the release occurred but also own an unconnected and non-adjacent piece of property which has been affected by the plume."

■ The Equal Protection Clause states, "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. When a case does not involve a suspect or quasi-suspect class, or a fundamental right, the statute should be tested under the rational basis standard. *Bibco Corp. v. City of Sumter*, 332 S.C. 45, 504 S.E.2d 112 (1998). The right to indemnification under the Superb Financial Responsibility Fund is not a fundamental right protected by the constitution. Further, the class Worsley seeks to distinguish, that of beneficial property owners also owning contaminated land, is not a suspect or quasi-suspect class. Thus, section 44–2–20(23) must be analyzed under the rational basis standard.

■ In order to satisfy the Equal Protection Clause under the rational basis standard, a classification must (1) bear a reasonable relation to the legislative purpose sought to be achieved, (2) members of the class must be treated alike under similar circumstances, and (3) the classification must rest on some rational basis. *Lee v. South Carolina Dep't of Natural Resources*, 339 S.C. 463, 467, 530 S.E.2d 112, 114 (2000). The courts will uphold a legislative enactment against constitutional attack if there is any reasonable hypothesis to support it. *Id.*

■ In considering the statute, the courts must give great deference to the legislature's classification decisions because it presumably debated and weighed the advantages and disadvantages of the legislation at issue. *Id.* "Further, '[t]he classification does not need to completely accomplish the legislative purpose with delicate precision in order to survive a constitutional challenge.'" *Id.* at 467, 530 S.E.2d at 114 (quoting *Foster v. South Carolina Dep't of Highways & Pub. Transp.*, 306 S.C. 519, 526, 413 S.E.2d 31, 36 (1992)).

In denying the claim, DHEC did not treat BPV any differently from others similarly situated. There was no evidence of any intentional discrimination against Worsley or BPV. The stated purpose of the Superb Financial Responsibility Fund is to compensate third parties for damages caused by accidental releases from underground storage tanks. S.C.Code Ann. § 44-2-40(A) (2002). As the circuit court found, "The General Assembly is placing a limit on the expenditure of public funds for landowners and tenants who are in positions of joint knowledge, control and benefit." Section 44-2-20(23) and DHEC's interpretation of it only distinguishes between the owners "of the property where the underground storage tank is located" and property owners who do not also own "the property where the underground storage tank is located." Thus, section 44-2-20(23) and DHEC's interpretation of it survive rational basis scrutiny. The circuit court did not err in finding there was no violation of the equal protection clause.

Because we find the circuit court did not err in upholding DHEC's denial of Worsley's claim for reimbursement for the above reasons, we need not address Worsley's remaining arguments. Accordingly, based on the foregoing reasons, the decision of the circuit court is

**AFFIRMED.**

HEARN, C.J., and HOWARD, J., concur.